IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:06-CV-62-D

| | | |
|---|---|---|
| MARTHA BROCK, | ) | |
| | ) | |
| Plaintiff/Claimant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND RECOMMENDATION** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings. Claimant Martha Brock seeks judicial review of the Commissioner's denial of her application for Disability Insurance Benefits and Supplemental Security Income payments. After a thorough review of the record and consideration of the briefs submitted by counsel, the Court recommends denying Claimant's Motion for Judgment on the Pleadings [DE-8], and granting Defendant's Motion for Judgment on the Pleadings [DE-10].

## STATEMENT OF THE CASE

On August 28, 2003, Claimant filed an application for Disability Insurance Benefits and Supplemental Security Income payments. Claimant asserted that she became disabled as of November 15, 2002, due to diabetes, rheumatoid arthritis, scoliosis, swelling of the knees and feet, a bone spur in the left knee, back and neck pain, memory problems, first stage glaucoma, depression and anxiety. Claimant's application was denied initially and upon reconsideration. Claimant then requested a hearing before an Administrative Law Judge ("ALJ"), which took place on October 6, 2004. After the hearing, the ALJ issued

a decision denying the plaintiff's claims on March 18, 2005. The Appeals Council denied Claimant's request for review on March 3, 2006, rendering the ALJ's decision a "final decision" for purposes of judicial review. See Walls v. Barnhart, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when the Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). Claimant timely commenced the instant action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

**I.    The Standard of Review and Social Security Framework**

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987); see also 42 U.S.C. § 405(g) (2006). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

This court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, in determining whether substantial evidence supports the Commissioner's decision, the court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and rationale in crediting the evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d

2

438, 439-40 (4th Cir. 1997).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. See 20 C.F.R. §§ 404.1520 and 416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the ALJ determines whether the claimant has a severe impairment or combination of impairments which significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled per se.

If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity (RFC) is assessed to determine if the claimant can perform his or her past work despite the impairments; if so, the claim is denied. However, if the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience and RFC, can perform other substantial gainful work. The Commissioner often attempts to carry its burden through the testimony of a vocational expert (VE), who testifies as to jobs available in the economy based on the characteristics of the claimant.

In this case, Claimant alleges in her brief that the ALJ erred by: (1) concluding that Claimant could perform light work when substantial evidence does not support that finding; and (2) relying on the VE's testimony that Claimant was not disabled and could work when the evidence did not support such a conclusion. It is the opinion of this Court that the ALJ

3

did not err.

## II.    The ALJ's Findings

In making the decision in this case, the ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920, and found that Claimant had not engaged in substantial gainful activity at any time relevant to the ALJ's decision.  (R. 32).  Then, the ALJ proceeded to step two to determine whether Claimant had a "severe" impairment or combination of impairments which significantly limited her from performing basic work activities.  See 20 C.F.R. §§ 404.1520(b) and 416.920(b).  The ALJ found that Claimant suffered from the severe impairments of diabetes mellitus, degenerative joint disease of the knee, and depression.  (R. 32).  However, at step three the ALJ determined that Claimant's impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  (R. 32).  Next, the ALJ determined Claimant's RFC by considering all of her subjective complaints and reviewing her medical records, and concluded that she had the ability to perform a significant range of light work activity.  (R. 32).  At step four, the ALJ found that Claimant could not return to her past relevant work as a warehouse laborer, a cashier, a painter, an insulator, and a parts deliverer.  (R.30).  However, at step five, the ALJ determined that Claimant could perform the light, unskilled work of a bander and a grader/inspector.  (R. 31).  As a result, the ALJ found that Claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of his decision.  (R. 32).  The ALJ also concluded that Claimant's allegations were "not fully credible."  (R. 25).

## III.    Claimant's Testimony at the Administrative Hearing

4

Claimant testified at her administrative hearing. (R. 411-35). She was 51 years old at the time of the hearing and testified that she had a tenth grade education. (R. 411-12). Claimant said that she had previously been employed as a factory worker, and a cashier. (R. 414-15). Claimant also testified that for three months after her alleged onset date, she worked in a factory but could only work three days a week and eventually had to stop altogether because of her health problems. (R. 414-15).

Claimant testified that she suffers from diabetes, which causes numbness, tingling, swelling and pain in her legs and feet. (R. 419). She stated that her legs and feet swell just about every day and that the swelling lasts for more than two or three hours most days. (R. 420). Claimant stated that she elevates her feet three to four hours every day in order to help the swelling. (R. 420-21). She also stated that she suffers from swelling in her left hand and arm. (R. 425). She testified that her arms are weak and that she cannot lift a gallon of milk with one hand. (R. 426). Claimant also stated that she suffers from pain in her hip, back and knees, and that her legs give out on occasion. (R. 427). Claimant stated that she has some trouble with her vision. (R. 428).

Claimant also stated that she has some psychological problems such as depression and post traumatic stress disorder. (R. 429-30). She said she has trouble with her memory and concentration. (R. 431).

She testified that she is able to perform some functions of daily living but is limited in her activities. For example, Claimant can wash the dishes once a day but she has to lean against a cabinet in order to do so, and cannot wash for more than 20 minutes. Claimant stated that she is able to drive but does not do so often. (R. 431). She testified that she does some of the cooking but not a lot. (R. 432). She also is able to do grocery

5

shopping if an automated chair is available.  (R. 432).

Claimant takes pain medication.  (R. 428).  She also takes medication for insomnia so that she can sleep at night. (R. 428).  One side effect from her medication is that she has to go to the bathroom about 20 times per day.  (R. 429).  She testified that she spends three-quarters of the day sleeping.  (R. 425).  Claimant also stated that she was unable to see specialists because she did not have the money to pay for medical treatment. (R. 434).

## IV.    The Vocational Expert's Testimony at the Administrative Hearing

Sondra Henry testified as a VE at the administrative hearing.  (R. 417, 435-38).  The VE began by classifying Claimant's past work experience.  (R. 435-36).  The ALJ then posed the following hypothetical:

> [P]lease assume a hypothetical person the same age as Mrs. Brock with the same work history, educational background; retaining the exertional capacity for light work only; with no climbing, crawling or balancing or exposure to hazards; no constant repetitive fine and gross manipulation; sit stand option at will; flexibility to use her walker to get to the workstation; no operation of foot pedals; no requirement for fine visual acuity; a low-stress, non-sequential production setting with no exposure to crowds; and finally . . . the flexibility to prop the feet while seated at the workstation at a 45 degree angle.  In your opinion, could that hypothetical person work on a full-time basis at the light level, and if so, at what pace?

(R. 436).  The VE responded in the affirmative.  Id.  According to the VE, such an individual could perform the jobs of a bander, with a Specific Vocational Preparation (SVP) of 1, and a Dictionary of Occupational Title (DOT) code of 920.687-026, and a grader inspector, with an SVP of 2 and a DOT code of 649.687-014.  (R. 436).  Those jobs mentioned by the VE existed in significant numbers in both the local and national economies.  (R. 436).

## V.    The ALJ Did Not Err by Finding that Claimant Could Perform Light Work

6

Claimant first argues that the ALJ erred by concluding that she retained the RFC to perform a significant range of light work.  (R. 19).  In determining her RFC, the ALJ considered:

> all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529 and 416.929, and Social Security Ruling 96-7p.  The undersigned must also consider any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations.

(R. 28).  In ten, single spaced pages, the ALJ considered Claimant's medical records, her subjective complaints, and her testimony at the hearing.  (R. 20-29).  After reviewing all of the evidence, the ALJ found that Claimant's  RFC limited her to light work with a sit/stand option and with the flexibility to prop up her feet at a 45 degree angle while seated.  (R. 28). Specifically, the ALJ concluded that:

> [C]laimant can lift and carry 20 pounds occasionally and 10 pounds frequently.  The claimant can stand for 6 hours in an 8-hour workday, walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday, incorporating her sit/stand option at will.  She is restricted to no climbing, crawling and balancing; no constant or repetitive fine and gross manipulation; use of a walker to get to job site, no exposure to hazards or operating foot pedals; no requirement for fine visual acuity; low stress, non-sequential production setting; no exposure to crowds; and flexibility to prop feet at 45 degree angle while seated.

(R. 32).  Claimant argues that the ALJ's determination that she could perform a significant range of light work is not supported by substantial evidence, and that instead, Claimant is limited to sedentary work.  Further, Claimant argues that the ALJ essentially found that she could only perform sedentary work because he altered the light work requirements significantly to provide Claimant with various accommodations based on her impairments.

7

Finally, Claimant argues that the ALJ concluded that she could perform light work because a finding by the ALJ that she was limited to sedentary work would have required a finding of disabled under the regulations.

However, it is the court's opinion that the ALJ permissibly determined Claimant's RFC based on the medical records and Claimant's testimony. The ALJ meticulously reviewed Claimant's medical history, including medical records and her claims of diabetes, rheumatoid arthritis, scoliosis, swelling in the knees and feet, severe back and leg pain, bone spur in the left knee, loss of memory, first stage glaucoma, depression and anxiety. The ALJ concluded that Claimant suffered from the severe impairments of diabetes mellitus, degenerative joint disease of the knee, glaucoma and depression. (R. 27). In light of these severe impairments, the ALJ limited Claimant to light work in which she would be able to have a sit/stand option, elevate her feet, and use a walker to get to her work station. Therefore, in accordance with established law, the ALJ considered the entire extent of Claimant's impairments and her symptoms before concluding that she could perform a significant range of light work. Cf. Walker v. Bowen, 889 F.2d 47, 49-50 (4th Cir. 1989) (noting that an ALJ must consider a claimant's impairments in concert to determine whether the claimant is disabled under the regulations).

Furthermore, the ALJ relied on medical evidence in determining both Claimant's RFC and the modifications appropriate to enable her to perform a significant range of light work. The ALJ accorded significant weight to the opinion of Dr. Dale Caughey, who evaluated Claimant on September 16, 2003. (R. 26). Dr. Caughey concluded that Claimant's peripheral pulses were intact without varicosity, brawny edema, joint swelling, or deformity. He noted that Claimant's grip was 5/5 on both the right and left hand, she

8

could handle small objects, button clothes, turn the doorknob and reach. He concluded that Claimant could tandem walk, heel and toe walk, and could squat and rise. (R. 184). Dr. Caughey opined that Claimant probably could return to the work force. (R. 185). In addition, Dr. B.B. Blackmon reviewed Claimant's medical records and concluded that she was able to occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk about 6 hours out of an 8-hour day, sit about 6 hours in an 8-hour day, and push and/or pull without difficulties. (R. 225-32).

Claimant has pointed to contradictory medical evidence that indicates that she does not possess the RFC to perform a significant range of light work. However, it is the province of the ALJ to review the evidence and resolve those conflicts. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on . . . the ALJ." Craig v. Chater, 76 F.3d , 585, 589 (4th Cir. 1996). Accordingly, it is the court's opinion that the ALJ did not err in his assessment of Claimant's RFC.

## VI.  The ALJ Did Not Err by Finding Claimant to be Not Fully Credible

The ALJ concluded that Claimant was not totally credible. In order to support his finding, the ALJ stated that Claimant engaged in some work activity after the alleged onset date of her disability, Claimant is able to perform some activities of daily living, which are inconsistent with her complaints of severe limitations, and that Claimant was non-compliant in obtaining medical care and in taking her medications.

Claimant argues that the ALJ's purported reasons for finding her not fully credible were not legitimate. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record,

9

and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p. When an ALJ fails to specify the reasons for an adverse credibility determination, remand is appropriate. See Ivey v. Barnhart, 393 F.Supp.2d 387, 390 (E.D.N.C. 2005) (concluding that remand was appropriate because the ALJ failed to adequately explain the basis of his credibility determination).

However, here, the ALJ did provide specific reasons for his adverse credibility findings, such as Claimant's daily activities, and her continued employment after her alleged onset date. Even if the court were to discount the ALJ's reliance on the fact that Claimant was "non-compliant" in taking her medications, which Claimant attributed to the fact that she could not afford to buy the medications prescribed to her or to seek continuing medical care, the ALJ provided other reasons for finding Claimant not totally credible. The fact that Claimant can point to other evidence in the record that supports her claimed impairments does not diminish the ALJ's analysis. When conflicting evidence is presented, it is up to the ALJ to resolve those inconsistencies. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). It is not the responsibility of this court to determine the weight of the evidence. Id. Here, the ALJ pointed to evidence in the record to support his conclusion that Claimant was not totally credible. Therefore, he satisfied his duty under the applicable regulations and law.

Claimant argues that the ALJ failed to assess all factors, such as daily activities, pain, medication, treatment, and any other factors concerning functional limitations, among others before making his credibility determination. See 20 C.F.R. §§ 404.1529c and 416.929c and SSR 96-7p. However, as discussed above, the ALJ meticulously reviewed

10

the medical records and Claimant's testimony before concluding that her activities of daily living and work history after her alleged disability onset date were inconsistent with her complaints of severe limitations. Cf. Hines, 453 F.3d at 565 (noting that testimony regarding daily living activities which is supported by record evidence, can be used to discredit a claimant's testimony regarding pain and symptoms). Accordingly, the ALJ did not err in finding claimant not fully credible.

## VII.    The VE's Testimony Constituted Substantial Evidence

Claimant argues that the VE's testimony did not constitute substantial evidence and that therefore, the ALJ should not have relied on it. The VE concluded that based on the hypothetical that the ALJ posed, Claimant could perform two types of jobs: bander and grader inspector. The VE noted that those jobs are categorized in the DOT as light work. When asked by the ALJ, the VE further noted that those job descriptions are consistent with the DOT, except for the sit/stand option which the VE knows is possible for those two types of jobs, either because of personal observation or professional knowledge. Claimant argues that the VE essentially described sedentary jobs, however, bander and grader inspector are classified as light work in the DOT. A VE may permissibly rely on the job descriptions provided in the DOT. See DeLoatche v. Heckler 715 F.2d 148, 151 (4th Cir. 1983) (noting that an ALJ may rely on the categorizations in the DOT). Moreover, the hypothetical that the ALJ posed to the VE was sufficiently detailed to take into account Claimant's age, work history, educational background and RFC. Therefore, the ALJ permissibly relied on the VE's testimony.

## CONCLUSION

11

Accordingly, because there is substantial evidence to support the findings of the ALJ, the court **RECOMMENDS** that the claimant's motion for judgment on the pleadings be **DENIED**, the defendant's motion for judgment on the pleadings be **GRANTED**. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This the 3rd day of July, 2007.

_____
DAVID W. DANIEL
United States Magistrate Judge